**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:14-CV-585-RJC-DCK**

| | |
|---|---|
| CHARLOTTE CHIROPRACTIC CLINIC, P.A., | ) ) ) |
| Plaintiff, | ) ) |
| v. | )    **MEMORANDUM AND** )    **RECOMMENDATION** |
| CHIRO-CAROLINA FAMILY AND SPORTS CARE, PLLC, and RICHARD WILLIAMS, | ) ) ) ) |
| Defendants. | ) ) |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion To Dismiss Complaint" (Document No. 14). This motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and applicable authority, the undersigned will respectfully recommend that the motion be <u>granted</u> in part and <u>denied</u> in part.

### I. BACKGROUND

Charlotte Chiropractic Clinic, P.A. d/b/a "ChiroCarolina" ("Plaintiff") initiated this action with the filing of its "Complaint" (Document No. 1) on October 10, 2014. Plaintiff's Complaint asserts causes of action against Chiro-Carolina Family And Sports Care, PLLC ("CCFSC") and Dr. Richard Williams ("Williams") (together, "Defendants") for: (1) unfair competition; (2) false designation of origin; (3) unfair and deceptive trade practices; (4) trademark infringement; and (5) tortious interference with actual and prospective business relations. (Document No. 1).

On January 20, 2015, Plaintiff filed a "Motion For Preliminary Injunction" (Document No. 13). The next day, "Defendants' Motion To Dismiss Complaint" (Document No. 14) was filed

with the Court. Defendants seek dismissal pursuant to Fed.R.Civ.P. 12(b)(6) contending that the Complaint fails to satisfy the requirements of Fed.R.Civ.P. 8. (Document No. 14).

In addition, Defendants have filed a "…Motion To Strike Declarations And Hearsay…" (Document No 24) and an "...Amended Motion To Strike Declarations And Hearsay…" (Document No. 28).

The pending motions have been fully briefed and are ripe for disposition. The motions for injunctive relief and to strike are before the presiding district judge. The motion to dismiss has been referred to the undersigned for a "Memorandum And Recommendation," and immediate review is appropriate.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

Defendants contend that even under the liberal standard of review set forth above, Plaintiff has failed to comply with the requirements of Fed.R.Civ.P. 8 or to show a plausible claim for relief. (Document No. 15, pp.4-5). The undersigned will address Defendants' specific arguments below.

**A. Lanham Act, 15 U.S.C. § 1125 (a)(1)(A) and (B)**

Plaintiff's first two (2) causes of action assert claims of "unfair competition" and "false designation of origin" under 15 U.S.C. § 1125 (a). (Document No. 1, pp.10-11). Defendants argue that Plaintiff's first claims must be dismissed because "Plaintiff has not alleged that its mark acquired distinctiveness" and because Plaintiff has not "alleged that its own use of its mark was lawful." (Document No. 15, p.7).

> In order to prevail in an action for service mark infringement and **unfair competition** under § 43(a) of the Lanham Act, a plaintiff must "first and most fundamentally prove that it has a valid and protectable mark." MicroStrategy, 245 F.3d at 341. If the plaintiff's mark is deemed to be protectable, it still cannot prevail unless it can

3

> show that the defendant's use of an identical or similar mark is likely to cause confusion among consumers.

U.S. Search, LLC v. U.S. Search.com Inc., 300 F.3d 517, 523 (4th Cir. 2002) (emphasis added).

"Section 43(a) creates a federal remedy against **unfair competition** in the form of a **false designation of origin**." Superior Performers, Inc. v. Family First Life, LLC, 2014 WL 7338923, at *4 (M.D.N.C. Dec. 22, 2014) (emphasis added) (quoting Devan Designs, Inc. v. Palliser Furniture Corp., 1992 WL 511694, at *4 (M.D.N.C. Sept. 15, 1992)).

> To state a **false designation of origin claim**, a plaintiff must sufficiently allege that:
>
> (1) a defendant uses a designation; (2) in interstate commerce; (3) in connection with goods and services; (4) which designation is likely to cause confusion, mistake or deception as to origin, sponsorship, or approval of defendant's goods or services; and (5) plaintiff has been or is likely to be damaged by these acts.

Id. (quoting America Online, Inc. v. LCGM, Inc., 46 F.Supp.2d 444, 449 (E.D.Va. 1998)) (emphasis added).

As noted by Defendants, the Lanham Act's protection includes unregistered marks. (Document No. 15, p.5) (citing Ale House Mgmt., Inc. v. Raleigh Ale House, Inc., 205 F.3d 137, 140 (4th Cir. 2000) (citing 15 U.S.C. § 1125(a)). "To ascertain whether a mark is protected, we must determine whether it is 1) generic, 2) descriptive, 3) suggestive or 4) arbitrary or fanciful." U.S. Search, LLC, 300 F.3d at 523 (citing Perini Corp. v. Perini Construction, Inc., 915 F.2d 121, 124 (4th Cir. 1990); see also, Ale House Mgmt., Inc. v. Raleigh Ale House, Inc., 205 F.3d at 140.

In response to the motion to dismiss, Plaintiff contends that it has adequately "alleged that it possess[es] a trademark that was used by Defendants in commerce in connection with the sale, offering for sale and advertising of services in a manner likely to cause confusion." (Document

No. 23, pp.4-5) (internal citations omitted). The undersigned agrees that Plaintiff has stated sufficiently plausible claims pursuant to 15 U.S.C. § 1125(a) to survive a motion to dismiss at this early stage and proceed to discovery.

Of course, the undersigned expresses no opinion at this time as to the ultimate merits of Plaintiff's claims. Notably, the Court's own research suggests that while Plaintiff appears to assert sufficient factual content to support plausible claims pursuant to §§ 1125 (a)(1)(A) & (B), these claims may be mislabeled. See Int'l Foundation of Employee Ben. Plans, Inc. v. Cottrell, 2015 WL 127839, at *2 (D.Md. Jan. 7, 2015) ("Section 1125(a) provides two grounds for asserting **unfair competition** claims: 15 U.S.C. § 1125(a)(1)(**A**) protects against **false designation**; 15 U.S.C. § 1125(a)(1)(**B**) protects against **false advertising**.") (emphasis added); MDM Group Associates, Inc. v. Emerald Isle Realty, Inc., 2008 WL 2641271, at *5, n.2 (E.D.N.C. July 1, 2008) ("Lanham Act contains two prongs. Section 1125(a)(1)(**A**) governs "**false designation of origin**" claims, and section 1125(a)(1)(**B**) governs "**false advertising**" claims.") (emphasis added); see also, Belmora Inc. v. Bayer Consumer Care AG, 2015 WL 518571, at *6, 12-13 (E.D.Va. Feb. 6, 2015). If indeed these claims are mislabeled, the undersigned assumes that these are scrivener's errors and not cause for dismissal at this stage. Plaintiff should consider whether to seek leave to amend, if appropriate.

**B. Unfair and Deceptive Trade Practices, N.C.Gen.Stat. § 75-1.1**

Next, Defendants contend that the allegations in the Complaint do not support a claim for unfair and deceptive trade practices under N.C.Gen.Stat. § 75-1.1 ("UDTPA"). (Document No. 15, pp.8-9).

> Under the North Carolina General Statutes section 75–1.1, a plaintiff must show that the defendant committed an unfair or deceptive act, that affected commerce, and proximately injured the plaintiff. Pleasant Valley Promenade v. Lechmere, Inc., 120

> N.C.App. 650, 464 S.E.2d 47, 58 (N.C.Ct.App. 1995). North Carolina courts indicated that the words "unfair methods of competition," as used by the statute, encompass any conduct a court of equity would consider unjust. Harrington Mfg. Co. v. Powell Mfg. Co., 38 N.C.App. 393, 248 S.E.2d 739, 744, 746 (N.C.Ct.App. 1978). "A practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987).

Shell Trademark Mgmt. BV & Motiva Enterprises, LLC v. Ray Thomas Petroleum Co., Inc., 3:07-CV-163-RJC, 642 F.Supp.2d 493, 505 (W.D.N.C. 2009).

Here, Defendants specifically argue that the Complaint is directed at "professional services" rendered by them, and that "all professional services rendered by a member of a learned profession" are expressly excluded under North Carolina's UDTPA. (Document No. 15, p.8) (citing N.C.Gen.Stat. § 75-1.1(b)). Defendants further argue that Plaintiff's UDTPA claim is deficient because it fails to adequately allege reliance on purported misrepresentations, or damages. (Document No. 15, pp.8-9).

In response, Plaintiff argues that the Complaint is not directed at Defendants' provision of chiropractic services, but at "their *advertising, marketing and promotion* thereof." (Document No. 23, p.13). According to Plaintiff, its allegations of UDTPA violations are not excluded because the claims do not relate to a "necessary part" of the professional services provided. (Document No. 23, p.13) (citing Reid v. Ayers, 138 N.C.App. 261, 267-68 (2000)).

Defendants contend that Plaintiff's reliance on Reid is based on dicta, and that more recent decisions uphold the "learned profession" exemption, even in circumstances involving advertising. (Document No. 26, pp.7-8) (citing Phillips v. Triangle Women's Health Clinic, Inc., 155 N.C.App. 372 (2002), *aff'd per curiam*, 357 N.C. 576 (2003); Wheeless v. Maria Parham Med. Ctr., Inc., 768 S.E.2d 119 (N.C.App. Dec. 2, 2014)). Defendants further contend that even if they were

6

subject to such claims, Plaintiff has failed to set out sufficient factual support for a UDTPA claim." (Document No. 26, p.8).

The undersigned observes that the Wheeless decision cited by Defendants relies on Reid to set forth the proper analysis:

> To determine whether the "learned profession" exclusion applies, a two-part inquiry must be conducted: "[f]irst, the person or entity performing the alleged act must be a member of a learned profession. Second, the conduct in question must be a rendering of professional services."

Wheeless, 768 S.E.2d at 123 (quoting Reid, 138 N.C.App. at 266).

In this case, like Wheeless, there does not appear to be any dispute that Defendants are members of a learned profession. See (Document No. 23, p.13-14); see also, N.C.Gen.Stat. § 55B-2 (5)-(6). Therefore, the remaining question is whether the conduct alleged by Plaintiff was a "rendering of professional services."

A decision in which this Court considered the applicability of Reid and whether certain conduct qualified as "rendering of professional services" is instructive here. See RCDI Construction, Inc. v. Spaceplan/Architecture, Planning & Interiors, P.A., 148 F.Supp.2d 607 (W.D.N.C. 2001). In RCDI, this Court determined that architects and architectural firms qualified as members of a learned profession. RCDI, 148 F.Supp.2d at 619. The RCDI Court then observed that the North Carolina General Statutes define the scope of the practice of architecture as including "offering to perform . . . professional services" – which the Court found to be the conduct plaintiffs complained of in that case. Id. (citing N.C.Gen.Stat. § 83A-1(7). This Court concluded that the architect defendants' alleged conduct qualified as "rendering of professional services," and therefore, could not serve as the basis for a UDTPA claim. Id.

7

The parties in this case do not directly address the scope and/or definition of chiropractic services, or whether such services include the conduct alleged by Plaintiff to support its UDTPA claim. According to Plaintiff, the relevant conduct involves "Defendants' use of 'reproductions, counterfeits, copies, and colorable imitations of Plaintiff's CHIROCAROLINA Mark' in connection with the advertising and marketing of chiropractic services." (Document No. 23, p.14) (citing Document No. 1, ¶¶ 14-15, 17). So far, neither the parties nor the undersigned has identified a statute or case law that clearly indicates whether advertising or marketing fall within the scope of chiropractic professional services.

As noted above, the North Carolina General Statutes define the "practice of architecture" as including "offering to perform . . . professional services." N.C.Gen.Stat. § 83A-1 (7). Similarly, the statutes define the "practice of medicine" as including the act of "advertising." N.C.Gen.Stat. § 90-1.1. The statutes provide a definition of "chiropractic," but do not appear to further elaborate on the chiropractic practice or whether it includes offers to perform, advertising, or marketing. N.C.Gen.Stat. §90-143.

The undersigned finds that this issue presents a close call. Under the circumstances of this case, the undersigned will recommend that dismissal of this claim be denied at this stage to allow for discovery, and if appropriate, further development of the arguments through summary judgment motions. In short, the undersigned concludes that Plaintiff's UDTPA allegations are sufficient to survive a motion to dismiss.

## C. Trademark Infringement

Defendants also seek dismissal of Plaintiff's claim for trademark infringement. (Document No. 15, pp.9-10). Defendants primarily argue that Plaintiff has not adequately alleged that it owns a valid mark and/or that its mark has acquired distinctiveness. Id.

8

> To establish trademark infringement under federal law, [plaintiff] must prove that (1) it owns a valid mark; (2) defendants used the mark in commerce and without [plaintiff's] authorization; (3) defendants used the mark, or an imitation of it, in connection with the sale of goods and services; and (4) defendants' use of the mark is likely to confuse customers. Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 152 (4th Cir. 2012) (quotation omitted); see 15 U.S.C. § 1114(1)(a); George & Co. LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009); Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252, 259 (4th Cir. 2007); People for Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 364 (4th Cir. 2001). "**The North Carolina common law of unfair competition in the context of trademarks ... is similar to the federal law of trademark infringement**." Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir.1987)

Re/Max LLC v. M.L. Jones & Associates, Ltd., 2014 WL 7405461, at *4 (E.D.N.C. Dec. 30, 2014) (emphasis added). See also, Superior Performers, Inc. v. Family First Life, LLC, 2014 WL 7338923, at *4 (M.D.N.C. Dec. 22, 2014) (citing Resorts of Pinehurst, Inc. v. Pinehurst Nat. Corp., 148 F.3d 417, 422 (4th Cir. 1998) ("'Likelihood of confusion' is the basic test of both common-law trademark infringement and federal statutory trademark infringement."). "The inquiry concerning the likelihood of confusion is a fact-intensive inquiry." Superior Performers, Inc. 2014 WL 7338923, at *5 (citing U.S. Hosiery Corp. v. The Gap, Inc., 707 F.Supp. 800, 810 (W.D.N.C. 1989)). It is not appropriate to weigh the various factors to be considered in such inquiry at the motion to dismiss stage. Id.

The parties appear to agree that review of trademark infringement follows the same principles that apply to Section 43(a) of the Lanham Act. See (Document No. 15, pp.9-10: Document No. 23, pp.4-12; Document No. 26, p.9). As such, and considering the undersigned's previous determination regarding Plaintiff's Lanham Act claims and the authority cited above, the undersigned will recommend that dismissal of the trademark infringement claim be denied at this

9

stage. Again, the undersigned finds that Plaintiff's claim should be subjected to discovery, and then most likely, further argument at a later stage of this litigation.

**D. Tortious Interference**

Plaintiff's final claim is for tortious interference with actual and prospective advantage. (Document No. 1, p.12). Defendants move to dismiss Plaintiff's tortious interference claim arguing that it has failed to allege facts to support such a claim. (Document No. 15, pp.10-13). Specifically, Defendants argue that Plaintiff has not sufficiently alleged that: (1) Plaintiff had a valid contract with a third party; (2) Defendant knowingly interfered with contract rights by persuading a third party not to do business with Plaintiff; (3) Defendants acted without justification; (4) a third party refrained from entering a contract with Plaintiff; (5) Plaintiff lost a contract due to Defendants' interference; (6) Defendants acted without justification; and/or that (7) Plaintiff suffered particular damages. (Document No. 15, pp.11-12).

In response, Plaintiff contends that it has adequately alleged that Defendants "maliciously" interfered with patients with whom Plaintiff had an actual or prospective business relationship. (Document No. 23, pp.14-15). Moreover, Plaintiff asserts that it "sets out **damages** it has suffered due to Defendant's bad acts **in detail** in Paragraphs 40, 42, 46, and 51." (Document No. 23, p.15) (emphasis added).

Both parties appear to recognize that Walker v. Sloan, a decision by the North Carolina Court of Appeals, is instructive here. See (Document No. 15, pp.12-13; Document No. 23, p.15). Walker v. Sloan provides in pertinent part that:

> An action for tortious interference with prospective economic advantage is based on conduct by the defendants which prevents the plaintiffs from entering into a contract with a third party. Owens v. Pepsi Cola Bottling Co., 330 N.C. 666, 680, 412 S.E.2d 636, 644 (1992). In Coleman v. Whisnant, 225 N.C. 494, 35 S.E.2d 647 (1945), our Supreme Court stated the following:

10

> We think the general rule prevails that unlawful interference with the freedom of contract is actionable, whether it consists in maliciously procuring breach of a contract, or in preventing the making of a contract when this is done, not in the legitimate exercise of the defendant[s'] own rights, but with design to injure the plaintiff[s], or gaining some advantage at [their] expense.... In Kamm v. Flink, 113 N.J.L., 582 [175 A. 62] 99 A.L.R., 1, it was said: "Maliciously inducing a person not to enter into a contract with another, which he would otherwise have entered into, is actionable if damage results." The word "malicious" used in referring to malicious interference with formation of a contract does not import ill will, but refers to an interference with design of injury to plaintiff[s] or gaining some advantage at [their] expense.
>
> 225 N.C. at 506, 35 S.E.2d at 656. Thus, to state a claim for wrongful interference with prospective advantage, the plaintiffs must allege facts to show that the defendants acted without justification in "inducing a third party to refrain from entering into a contract with them which contract would have ensued but for the interference." Cameron v. New Hanover Memorial Hospital, 58 N.C.App. 414, 440, 293 S.E.2d 901, 917, *disc. review denied and appeal dismissed*, 307 N.C. 127, 297 S.E.2d 399 (1982).

Walker v. Sloan, 137 N.C.App. 387, 392-93 (2000).

The Walker decision further provides that plaintiffs are "required to assert some **measurable damages** resulting from defendants' allegedly tortious activities, i.e., what 'economic advantage' was lost to plaintiffs as a consequence of defendants' conduct." Walker, 137 N.C.App. at 394 (emphasis added). The Walker court concluded that a complaint that "states only that 'Defendants actions resulted in actual damage to the plaintiffs'" is insufficient. Id.

Based on the foregoing authority, and the parties' briefs, the undersigned is persuaded that the Complaint fails to sufficiently allege factual content to support a plausible claim for tortious interference. In particular, the undersigned observes that although Plaintiff argues that it has set

11

out its damages "in detail," such a conclusion is not supported.  See (Document No. 23, p.15). Contrary to Plaintiff's assertion, paragraphs 40, 42, 46, 51 and 56 make no mention of "damages," and paragraph 58 merely states that "Plaintiff has been damaged by the acts of Defendants complained of herein."  (Document No. 1, pp.10-12).  Plaintiff's conclusory statement regarding damages is very similar to the language the Walker v. Sloan decision determined was inadequate. Compare Walker, 137 N.C.App. at 394 and (Document No. 1, p.12, ¶58).

In short, the undersigned finds that Plaintiff's allegations, including its failure to adequately allege some "measurable damages," are insufficient to support its final claim.  Id.  As such, the undersigned will recommend that the motion to dismiss be granted as to Count V.

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendants' Motion To Dismiss Complaint" (Document No. 14) be **GRANTED in part**, and **DENIED in part**.  Specifically, the pending motion to dismiss should be denied at this stage of the litigation as to Counts I-IV, and granted as to Count V.

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Diamond,

416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: June 24, 2015

David C. Keesler
United States Magistrate Judge