UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-00585-RJC-DCK

| | |
|---|---|
| CHARLOTTE CHIROPRACTIC CLINIC, P.A. d/b/a CHIROCAROLINA, ) ) ) Plaintiff, ) ) v. ) ) RICHARD WILLIAMS and ) CHIRO-CAROLINA FAMILY AND SPORTS ) CARE, PLLC, ) ) Defendants. ) ) | **ORDER** |

**THIS MATTER** comes before the Court on Defendants' Motion to Dismiss and Memorandum in Support, (Doc. Nos. 14, 15); Plaintiff's Response, (Doc. No. 23); Defendant's Reply, (Doc No. 26); the Magistrate Judge's Memorandum and Recommendation ("M&R"), (Doc. No. 32); Defendants' Objections to the M&R, (Doc. No. 33); and Plaintiff's Response to Defendants' Objections, (Doc No. 34). The issues are ripe for adjudication.

## I. BACKGROUND

Neither party has objected to the Magistrate Judge's statement of the factual and procedural background of this case; therefore, the Court adopts the facts as set forth in the M&R. The Magistrate Judge recommended that the Motion to Dismiss be granted in part and dismissed in part. Specifically, the M&R recommended the Motion be denied as to Counts I through IV and granted as to Count V. Plaintiff did not object to the dismissal of Count V. Defendants objected to Parts A, B, and C (Counts I through IV) of the M&R. These objections are considered below.

## II. STANDARD OF REVIEW

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) & (B). The Federal Magistrate Act provides that a district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. at § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). However, "when objections to strictly legal issues are raised and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Similarly, when no objection is filed, "a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72, advisory committee note).

The standard of review for a motion to dismiss is well known and well-stated in the M&R. It tests the legal sufficiency of a complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009). Facial plausibility means allegations that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon

2

which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Furthermore, a court "must accept as true all of the factual allegations contained in the complaint" when ruling on a motion to dismiss. Id. at 94. However, a court is not required "to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "Courts cannot weigh the facts or assess the evidence at this stage, but a complaint entirely devoid of any facts supporting a given claim cannot proceed." Potomac Conference Corp. of Seventh-day Adventists v. Takoma Acad. Alumni Ass'n, Inc., 2 F. Supp. 3d 758, 768 (D. Md. 2014). And of course, the court must "view the complaint in the light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

**III. DISCUSSION**

Neither party has challenged the Magistrate Judge's conclusions of law generally with respect to Rule 12(b)(6) motions, and this Court finds them correct. Defendants have challenged parts A, B, and C of the M&R, which applied that law to the allegations in the Complaint resulting in a recommendation to deny dismissal of Counts I through IV.

A. Counts I, II, and Derivatively IV

To allege a Lanham Act violation (Counts I and II), and derivatively a claim for violation of North Carolina law on trademark infringement (Count IV), a plaintiff must establish:

> (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers.

People for Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 364 (4th Cir. 2001) (citing 15 U.S.C. §§ 1114, 1125(a)). The likelihood of confusion is a factual issue dependent on the circumstances of each case and is ill-suited to a motion to dismiss. Petro Stopping Ctrs., L.P. v.

3

James River Petroleum, Inc., 130 F.3d 88, 92 (4th Cir.1997). Nevertheless, "a conclusory and 'formulaic recitation' of the elements of a trademark infringement cause of action is insufficient to survive a motion to dismiss." Potomac Conference Corp. of Seventh-day Adventists, 2 F. Supp. 3d at 768.

Plaintiff appears to have foregone its argument before the Magistrate Judge that the United States Patent and Trademark Office ("USPTO") conditional registration provided strong evidence of suggestiveness requiring a presumption of protection. See (Doc No. 23 at 6). Instead, Plaintiff argues that distinctiveness of its mark is fact specific and ill-suited for Rule 12(b)(6) dismissal. See (Doc. No. 34 at 2 (citing Canada Pipeline Accessories, Co. v. Canalta Controls, Ltd., No. CIV.A. 3:12-8448, 2013 WL 3233464, at *6 (S.D. W. Va. June 25, 2013) (citing other 4th Cir. cases)). If a mark is contestable or has not been registered with the USPTO, its validity and protectability under trademark law is "tied to the mark's distinctiveness." Retail Servs., Inc. v. Freebies Publ'g, 364 F.3d 535, 538 (4th Cir. 2004). Courts measure a mark's distinctiveness along a spectrum consisting of four broad categories in ascending order of strength or distinctiveness: generic marks, descriptive marks, suggestive marks, and arbitrary or fanciful marks. See Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984). The more distinctive the mark, the greater protection it is afforded under trademark law. Marks that are suggestive or arbitrary are considered "strong and presumptively valid" and are entitled to trademark protection. Id. In contrast, a descriptive mark is entitled to protection only upon proof of secondary meaning, which is sometimes referred to as "acquired distinctiveness." Id. Acquired distinctiveness is "the consuming public's understanding that the mark, when used in context, refers, not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify." Perini Corp. v. Perini Constr., Inc.,

915 F.2d 121, 125 (4th Cir. 1990). Marks are protected when they have "become sufficiently distinctive to establish a mental association in buyers' minds between the alleged mark and a single source of the product." Retail Servs., Inc., 364 F.3d at 539 (internal quotation marks omitted).

Defendants object that the "fundamental failure" of the M&R is not assessing this test of ownership against the allegations in the Complaint. (Doc. No. 33 at 2). Plaintiff alleges in its Complaint that it possessed a trademark—ChiroCarolina—that Defendants used a nearly identical mark in commerce in connection with the sale, offering for sale, and advertising of services in a manner likely to cause confusion. To support this allegation, Plaintiff further alleges that its experienced practitioners adopted this mark in March 2010, and have used it continuously in interstate commerce to market its chiropractic activities. (Doc. No. 1 ¶9: Complaint). Its business brings in six figure annual revenue and consists of a staff of doctors and employees who serve over 1,400 patients each month. (Complaint ¶10). Plaintiff has filed an application to register its CHIROCAROLINA trademark with the USPTO, and it was granted preliminary approval for registration. (Complaint ¶11). Plaintiff alleges that Defendants have used a similar mark, CHIRO-CAROLINA, on its website, on Facebook, and elsewhere, which has caused confusion. Plaintiff also points out specific events where potential customers have been misled by Defendants usage of the alleged similar mark. (Complaint ¶¶24-39).

Taken in a light most favorable to Plaintiff, it has pled facts rendering it plausible that CHIROCAROLINA is descriptive, that it has acquired secondary meaning, and that Defendants' use of CHIRO-CAROLINA infringes on Plaintiff's trademark rights.

Defendants argue that the relevant market of distinctiveness is Taylorsville, the location of their business. But the Court sees no reason at this stage to limit protectability to the physical

location of Defendants' clinic.  The Complaint alleges misuse in a variety of contexts not confined to a small geographic area including the use of the internet and social media.  The world has changed, and geography gives way to the internet with respect to advertisement and prohibited inducement.  Plaintiff's Complaint as to Claims I and II survives.  It plausibly alleges that its potential customers were lured away by Defendants' misuse of its mark.

Because the parties agree that the standards for asserting Lanham Act claims for trademark infringement and unfair competition and the test for trademark infringement and unfair competition under state law is largely the same, Plaintiff's claim under Count IV survives as well.

> B. Count III: The Learned Profession exception to the application of North Carolina's Unfair and Deceptive Trade Practices Act, requires dismissal of Count III.

Defendants object to the M&R's conclusion that Plaintiff's claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, survives due to the lack of clarity concerning whether the learned profession services exclusion includes advertising and marketing.

The Court must conduct at two-step inquiry in order to determine whether the "learned profession" exclusion applies: (1) "the person or entity performing the alleged act must be a member of a learned profession," and (2) "the conduct in question must be a rendering of professional services." Wheeless v. Maria Parham Med. Ctr., Inc. 768 S.E.2d 119, 123 (N.C. Ct. App. 2014), appeal dismissed, review denied, 771 S.E.2d 284 (N.C. 2015).  The parties agree that Defendants are members of a learned profession.  They disagree as to whether Defendants' use of the mark in advertising and marketing qualifies as a professional rendering.

Plaintiff relies on Reid v. Ayers, 531 S.E.2d 231, 236 (N.C. Ct. App. 2000), for the proposition that advertising is not a necessary part of the professional services of an attorney.

6

Reid does say that; however, it constitutes too slender a reed to bear the weight of other authorities. Defendants argue that Wheeless and Phillips v. A Triangle Women's Health Clinic, Inc., 573 S.E.2d 600 (2002), aff'd in part, rev'd in part, 597 S.E.2d 669 (2003), trump this reading of Reid. In Wheeless, the North Carolina Court of Appeals upheld the learned profession exclusion rejecting the argument that defendant's anonymous complaint based upon allegedly confidential peer reviews fell outside the prohibited zone. The court found it "well-settled" that matters "affecting the professional services rendered by members of a learned profession" fell within the exception. Wheeless, 768 S.E.2d at 123. In Phillips, the court, construing the exclusion broadly, found that misrepresentations made by an obstetrician were part of the learned profession exclusion whether made in a consultation or advertisement. 573 S.E.2d at 604.

Defendant's strongest argument by precedential analogy is to RCDI Construction, Inc. v. Spaceplan/Architecture, Planning & Interiors, P.A., 148 F. Supp. 2d 607 (W.D.N.C. 2001). In that case, then-Magistrate Judge Max O. Cogburn, Jr. was affirmed in finding that "soliciting business" was part of the rendering of professional services by an architect. Id. at 619. Judge Cogburn dismissed the "dicta" in Reid, relied upon here by Plaintiff, on the grounds of *expressio unius est exclusio alterius*. As Defendants aver, N.C. Gen. Stat. § 90-154(b)(1) denotes advertising as a grounds for discipline by the Board of Chiropractic Examiners; and the administrative regulations outline prohibited forms of chiropractic advertising. This is enough to persuasively establish advertising and marketing services as part of the learned profession of chiropractic services exempt from Section 75-1.1.

## IV.   CONCLUSION

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss is **GRANTED in part** as to Count III (Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1) and Count V (Tortious Interference), and the Motion to Dismiss is **DENIED in part** as to Counts I, II, and IV.

Signed: September 15, 2015

Robert J. Conrad, Jr.
United States District Judge