IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-00585-RJC-DCK

| | |
|---|---|
| CHARLOTTE CHIROPRACTIC CLINIC, P.A. d/b/a CHIROCAROLINA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) **ORDER** |
| RICHARD WILLIAMS and CHIRO-CAROLINA FAMILY AND SPORTS CARE, PLLC | ) ) ) ) ) |
| Defendants. | ) ) |

**THIS MATTER** is before the Court on Plaintiff's Motion for Preliminary Injunction, Supporting Memorandum, and Exhibits (Doc. No. 13 et seq.); Defendants' Response Memorandum and Exhibits, (Doc. No. 20 et seq.); Plaintiff's Reply and Exhibits, (Doc. No. 22 et seq.); and related filings. This matter is now ripe for review.

I. BACKGROUND

The Plaintiff's claims against Defendants, which survived Defendants' Motion to Dismiss, allege: unfair competition (Claim I); false designation of origin (Claim II) in violation of the Lanham Act; and trademark infringement under the common law of North Carolina (Count IV). In order to prevail in an action for service mark infringement and unfair competition under § 43(a) of the Lanham Act, a plaintiff must prove that it has a valid and protectable mark, and that it can show that the defendant's use of an identical or similar mark is likely to cause confusion among consumers. U.S. Search, LLC v. U.S. Search.com Inc., 300 F.3d 517, 523 (4th Cir. 2002). To state a false designation of origin claim, a plaintiff must sufficiently allege that: "(1) a defendant uses a designation; (2) in interstate commerce; (3) in connection with goods and

1

services; (4) which designation is likely to cause confusion, mistake or deception as to origin, sponsorship, or approval of defendant's goods or services; and (5) plaintiff has been or is likely to be damaged by these acts." Superior Performers, Inc. v. Family First Life, LLC, No. 1:14CV283, 2014 WL 7338923, at *4 (M.D.N.C. Dec. 22, 2014) (quoting Am. Online, Inc. v. LCGM, Inc., 46 F. Supp. 2d 444, 449 (E.D. Va. 1998)); see also 15 U.S.C. § 1125(a).[1]

## II. DISCUSSION

A preliminary injunction is an extraordinary remedy, the primary function of which is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit. In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding such request." Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 542 (1987). A plaintiff seeking a preliminary injunction must establish four elements, including that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

### A. Likelihood of Success on the Merits

This Court finds that Plaintiff is likely to prevail on the merits of its claims. Although the tests for the different claims vary slightly, the core issue to be proved is whether Defendants use of the mark "CHIRO-CAROLINA" infringes on a unique right of Plaintiff to use its mark "CHIROCAROLINA."

As stated in the companion Order granting in part and denying in part Defendants' Motion to Dismiss, (Doc. No. 35), courts measure a mark's distinctiveness along a spectrum

---

[1] In order to prevail on a charge of trademark infringement under North Carolina common law, plaintiff would also have to show lack of consent. See Rosetta Stone Ltd. V Google, Inc., 676 F.3d 144 (4th Cir 2012)

consisting of four broad categories in ascending order of strength or distinctiveness: generic marks, descriptive marks, suggestive marks, and arbitrary or fanciful marks. See Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984). The more distinctive the mark, the greater protection it is afforded under trademark law. Marks that are suggestive or arbitrary are considered "strong and presumptively valid" and are entitled to trademark protection. Id. In contrast, a descriptive mark is entitled to protection only upon proof of secondary meaning, which is sometimes referred to as "acquired distinctiveness." Id. Acquired distinctiveness is "the consuming public's understanding that the mark, when used in context, refers, not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify." Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 125 (4th Cir. 1990). Marks are protected when they have "become sufficiently distinctive to establish a mental association in buyers' minds between the alleged mark and a single source of the product." Retail Servs., Inc., 364 F.3d at 539 (internal quotation marks omitted).

Plaintiff is the senior user. It began using the CHIROCAROINA mark years before Defendants opened for business. Plaintiff used its mark in connection with Internet and other advertising for the performance of chiropractic services in Charlotte, North Carolina. Additionally, Plaintiff has been designated as a satellite clinic facility by the Veterans Affairs Hospital in Salisbury, North Carolina since 2012, and it is the only such clinic in North Carolina. Plaintiff appears to advertise for patients from various places in the southeastern region of the United States. Its use of the CHIROCAROINA mark was transparent and readily discoverable by anyone with internet access. Plaintiff applied to the United States Patent and Trademark Office for registration of the mark in April 2014, which is currently pending.

Defendants argue that the lack of a physical location in Taylorsville, North Carolina

3

reflects a lack of market penetration or acquired distinctiveness. This argument is of little moment. Most advertising today is Internet-based, and Plaintiff has clearly shown by affidavit a statewide and regional awareness of their mark. The combination of the words themselves suggest statewide and possibly multi-state application without any geographic limitation to a single, physical location. Regardless of Plaintiff's lack of a brick and mortar presence in Taylorsville, it has an Internet and advertising presence that is certainly not limited only to Charlotte.

B. Confusion

In determining the likelihood of confusion, courts apply the non-exclusive, non-dispositive Pizzeria Uno/Sara Lee multi-factor test, which evaluates: (1) "the strength or distinctiveness of the mark;" (2) "the similarity of the two marks;" (3) "the similarity of the goods/services the marks identify;" (4) "the similarity of the facilities the two parties use in their businesses;" (5) "the similarity of advertising used by the two parties;" (6) "the defendant's intent;" (7) "actual confusion;" "(8) the quality of the defendant's product; and (9) the sophistication of the consuming public." Pizzeria Uno Corp., 747 F.2d at 1527; Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 463-64 (4th Cir. 1996).[2] However, the factors are not of equal importance, nor are they all relevant in every case. Id.

These factors collectively weigh in favor of a finding of customer confusion. Plaintiff's mark, CHIROCAROLINA, is inherently distinctive. Plaintiff has credibly established through Dr. Ferzaan Ali's Declaration, (Doc. No. 13-2), that it has used the mark in treating thousands of patients, publishing numerous articles, giving lectures, and advertising on Internet and other

---

[2] The curious culinary coupling is tied to the factors. Pizzeria Uno delineates the first seven factors, and Sara Lee adds the latter two.

channels. Therefore, Factor 1 is established.

Similarly, Factors 2 through 5 (the similarity factors) are readily established. CHIROCAROLINA and CHIRO-CAROLINA are nearly the same marks, and both Plaintiff and Defendant advertise the same services through similar media outlets.

Factors 7 and 9 too weigh strongly in Plaintiff's favor. The allegations in the Complaint coupled with supporting declarations indicate actual, not just likely, confusion. This is understandable given the likely gamut of potential customers, ranging from sophisticated to unsophisticated—all seeking pain relief through chiropractic services.

The Court does not make a finding on Defendant's intent. The record is not sufficiently developed for that purpose. However, not every factor needs to support Plaintiff's position on confusion; thus, the Court finds there is a likelihood of confusion.

C. Irreparable Harm

In the Fourth Circuit, in the context of a Lanham Act trademark infringement case, "a presumption of irreparable injury is generally applied once the plaintiff has demonstrated likelihood of confusion, the key element in an infringement case." Scotts Co. v. United Indus. Corp., 315 F.3d 264, 273 (4th Cir. 2002); see also Rebel Debutante LLC v. Forsythe Cosmetic Grp., Ltd., 799 F. Supp. 2d 558, 579-80 (M.D.N.C. 2011) (noting that this "commonly-applied presumption" has not been altered by the Supreme Court's holding in eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006)). Nevertheless, the Court finds that Plaintiff has shown that immediate and irreparable injury, loss, or damage will result from misdirection of affiliation inquiries and actual customer loss. Such loss for the time period of this litigation would be irreparable.

D. Balance of Equities

The Court finds that the balance of equities tips in the favor of Plaintiff. If injunctive relief was denied, Plaintiff will likely suffer irreparable harm. It has been providing chiropractic services advertising with the CHIROCAROLINA mark for years. Granting the motion will prevent Defendants from making substantial inroads on the good will developed over time by Plaintiff without curtailing them from establishing their own independent reputation for excellence. Defendants on the other hand have been using their mark for a shorter period of time; they can transfer their marketing effort to a different mark without the same loss of investment over time. The Court finds this factor weighs in favor of preliminary injunctive relief.

   E.  Public Interest

Finally, this Court finds that the public interest is furthered by the granting of a preliminary injunction. The public has an interest in being able to secure the treatment from the provider they intended to consult without confusion. Customers and potential customers should have unfettered access to the physician of their choice and not be lured, intentionally or not, to another provider.

Having considered the four factors, the court finds that the entry of a preliminary injunction is necessary to protect Plaintiff from ongoing and irreparable harm during the pendency of this action. Plaintiff is likely to prevail on its claims, and the balance of equities tip in its favor. The public interest is served by the granting of this injunction.

   F.  Bond

The Federal Rules of Civil Procedure state that a "court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or

restrained." Fed. R. Civ. P. 65(c). The amount of bond is within the discretion of the Court. Pashby v. Delia, 709 F.3d 307, 332 (4th Cir. 2013). This Court finds that a bond of $25,000.00 is sufficient.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Preliminary Injunction, (Doc. No. 13), is **GRANTED**:

1. Defendants Richard Williams and Chiro-Carolina Family and Sports Care, PLLC, their directors, officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with them are hereby enjoined from engaging either directly or indirectly in any activity involving the marketing, advertising, promotion, or selling of chiropractic services using the CHIROCAROLINA and CHIRO-CAROLINA FAMILY AND SPORTS CARE designations until the final disposition of the above-captioned matter; and

2. Defendants' Motion to Strike, (Doc. No. 24), and Amended Motion to Strike, (Doc. No. 28), are **DISMISSED as moot**.

Signed: September 15, 2015

Robert J. Conrad, Jr.
United States District Judge